[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2011
JOHN LEY
CLERK

No. 10-12878
Non-Argument Calendar
_____

Agency No. A078-588-555


PEDRO ANTONIO SALINAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 30, 2011)

Before CARNES, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Pedro Antonio Salinas, a native and citizen of Colombia, seeks review of

the Board of Immigration Appeals' final order affirming an Immigration Judge's order of removal. Salinas contends that the BIA erred when it found that he had failed to establish eligibility for asylum and withholding of removal.

I.

Before coming to the United States Salinas lived in Bogota, Colombia. At that time he worked as a van driver. He was also a member of the Colombian Liberal Party.

In August of 1999 he was hired to transport two passengers using his van. After he picked them up they identified themselves as members of the Revolutionary Armed Forces of Colombia (FARC). At gunpoint the FARC members forced Salinas to take them to the outskirts of the city and told him that he had to meet with a FARC commander. Salinas begged for his life and agreed to follow their orders.

After they arrived Salinas was removed from the van and taken to meet the commander. Salinas was also searched by FARC members and they realized his political affiliation based on a Liberal Party membership card that they found in his wallet. The commander told Salinas that he needed to help the FARC "[t]he same way [he] help[ed] the Liberal Party" and told him to transport various weapons and army uniforms for the FARC. Although Salinas at first refused to

2

transport the weapons and uniforms, he agreed to do so after the commander grabbed him by the neck and threatened him. He was then taken to another location where his van was filled with weapons and uniforms, which he transported back to the commander. He was then released, but he was warned that if he told the police what had happened, "he would be killed."

Two weeks later a friend of Salinas' was found dead on the side of the road with a bullet through is head. His body was found near the location where Salinas had met with the commander. There were conflicting rumors about the motive for the killing—some said he was killed by the Colombian Army for cooperating with the FARC and some said that he was killed by the FARC for being an informant of the Colombian Army. Salinas was afraid of what the FARC might do to him so he contacted a friend of his in the Colombian Army and told his friend what he had done for the FARC. Salinas, scared for his life, then decided to flee to the United States. He later learned that the Colombian Army used his information to raid a FARC building that was used as a munitions factory.

On October 18, 1999 Salinas was admitted into the United States as a tourist. On October 12, 2000 he filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. After an interview with an asylum officer, on May 6, 2002 Salinas was charged with removability

3

under 8 U.S.C. 1227(a)(1)(B) as an alien who overstayed his visa. Salinas conceded removability, but sought relief based on the threats he had received from the FARC when he was in Colombia.

The IJ held a removal hearing on March 13, 2007 and Salinas testified to the facts set forth above. Although the IJ found Salinas to be credible, he concluded that Salinas had not been persecuted based on a protected ground because Salinas had not been injured when he was picked up by the FARC. Instead, he was "merely forced to engage in a criminal act." Further, the IJ found that Salinas was not in a protected class because he was kidnaped so that the FARC could use his van, and "individuals who have cars and are drivers" are not a protected group.

The IJ determined, however, that Salinas was eligible for asylum because he had a well-founded fear of future persecution. The IJ explained that "[Salinas,] by becoming a government informant and informing his Army friend suddenly changed his position and created a new social group, that of individuals who have informed on activities of [the FARC]." He then found that there was significant evidence that Salinas was likely to be persecuted based on his "informant status" if he returned to Colombia.

The government appealed the IJ's decision to the BIA, arguing that Salinas had failed to establish a well-founded fear of future persecution based on a

protected status. Salinas asked the BIA to summarily affirm the IJ's ruling, and he did not challenge the IJ's determination that he failed to establish past persecution based on a protected ground. On April 14, 2009 the BIA ruled in favor of the government, explaining that:

> Given the voluntary nature of the decision to serve as a government informant, the lack of social visibility of the members of the purported social group, and the indications in the record that the FARC retaliates against anyone perceived to have interfered with its operations, we conclude that the respondent has not demonstrated that "individuals who have informed on activities of the guerilla members" constitute a "particular social group" as the term is used in the definition of a "refugee" in section 101(a)(42)(A) of the Act.

The BIA vacated the IJ's order granting asylum and remanded the case to allow Salinas to apply for a voluntary departure, and if he chose not to, for the IJ to order removal.

Salinas petitioned this Court for review of that decision. We sua sponte dismissed the petition for lack of jurisdiction because the BIA's order was not a final order of removal. Salinas v. United States Att'y Gen., No. 09-12461-E (11th Cir. June 19, 2009).

On July 29, 2009 a second removal hearing was held before the IJ and Salinas said that he did not want to seek a voluntary departure or protection under the Convention Against Torture. Then, based on the BIA's decision, the IJ denied

5

Salinas' applications for asylum and withholding of removal and ordered that he be removed to Colombia.

Salinas appealed that order to the BIA. He argued that the BIA erred in its earlier decision because he had proven that he had a well-founded fear of future persecution based on his status as an informant, which entitles him to refugee status. On May 25, 2010 the BIA dismissed the appeal, noting that Salinas' "arguments are actually directed at the Board's vacation of the asylum grant, . . . [which] is a matter for a petition of review." This appeal followed.

## II.

"To the extent that the BIA's decision was based on a legal determination, review is de novo. However . . . de novo review of the BIA's interpretation is informed by the principle of deference articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984)." Castillo-Arias v. United States Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006) (alterations and quotation omitted).

"To be eligible for asylum, the applicant bears the burden of proving statutory 'refugee' status." Chen v. United States Att'y Gen, 463 F.3d 1228, 1231 (11th Cir. 2006). "That is, the alien must, with specific and credible evidence, establish (1) past persecution on account of race, religion, nationality, membership

6

in a particular social group, or political opinion; or (2) a well-founded fear of future persecution on account of a statutorily-protected ground." Id. In Castillo-Arias we held that the BIA's determination that noncriminal informants do not constitute a statutorily-protected group for refugee status was reasonable given Chevron deference. Castillo-Arias, 446 F.3d at 1199.

### III.

Salinas contends that the BIA erred when it found that he was not entitled to relief because of his well-founded fear of future persecution on account of his status as an informant. He specifically argues that it was "eminently reasonable" for "a man who provided information to the Colombian Army which results in [the] successful attack on a FARC base to conclude that he has been branded an enemy for his activities" and that as an informant the FARC "imputed to him . . . an ideology opposite to theirs." Although we agree that it is reasonable for Salinas to fear persecution from the FARC because as an informant for the Colombian Army he was branded as an enemy, the BIA also reasonably found that being an informant is not a statutorily-protected ground that allows him to obtain refugee status. See Castillo-Arias, 446 F.3d at 1195, 1199 (upholding as reasonable the BIA's interpretation that "informants" are not a protected group "because there is no evidence that the [organization] would treat [informants] any

7

differently from any other person the cartel perceived to have interfered with its activities.").  Because Salinas did not meet the standard of proof for asylum relief he also cannot meet the higher standard for eligibility for withholding of removal. See Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1232–33 (11th Cir. 2005).

**PETITION DENIED.**